Okay, welcome counsel. We're happy to have you before the court. And although this is telephonic, we're going to abide by our usual 15 minutes per side. I'll take care of timing, but I would suggest that you do so as well to help guide yourself through your argument. So without further ado, the next case is Bezer v. Superintendent Camp Hill, number 19-2202. And we'll hear from Mr. Castellava first. And I guess the first order of business is, will you be reserving time for rebuttal? Yes, thank you. I'd ask to reserve five minutes for rebuttal. Okay. All righty. So you have ten minutes in your opening argument, and you may proceed. Okay, thank you. Good morning, your honors. May it please the court, my name is Michael Castellava, and I represent Douglas Bitzer, the appellant in this matter. Mr. Bitzer had been charged in two informations in Pennsylvania. Each information had several counts. Mr. Bitzer entered a guilty plea. At the time the guilty plea was entered, on the record colloquy, it was specifically stated that it was the agreement of the parties that the government would not oppose all sentences running concurrently on all cases. Prior to the oral plea agreement being entered, there was a writing signed by the parties. The Pennsylvania Superior Court described the writing as an executory agreement which was not enforceable. That is on pages four and five of the Superior Court's opinion. The next thing that happened was... You understand Judge Roth is not a sir, but just pointing that out is not... Judge Roth is a female. Okay. Sorry, Judge. I certainly hope so, yes. What is the writing that is an executory? Tell me what that is. There was a writing that was signed prior to the plea agreement being entered on the record. That said what? Well, there was a clause in it that said that this was the entire agreement between the parties. Oh, okay. I understand. Okay, which was not in fact true because there was an additional term that was set forth in the oral plea agreement. Okay. Okay. Two months later... And this is what's called a hybrid? Well, what they claim is a hybrid is that there was no agreement as to sentence itself. And one of the places where I think the main place where the lower courts, the other courts, got off the track is... We were never arguing, and we're not arguing today, that the sentencing judge was obligated to impose concurrent sentences. Our position has always been that the government breached the agreement because the government didn't honor its part of the agreement, but not that the court was obligated to impose a concurrent sentence. The Superior Court talks about a hybrid agreement being one where there's a recommendation, but there's no specific agreement that the court has to impose a certain sentence. Okay. When Mr. Bitzer was sentenced by the court, the judge started off by saying he was going to honor the agreement between the parties. Then he started giving Mr. Bitzer consecutive sentences. I stopped the judge and said, wait a second, judge. You said you were going to honor the agreement between the parties, but this is not the agreement. The agreement was that everything would run concurrent. At that point, the government attorney spoke up and said there was no such agreement, judge. Those weren't her exact words, but the essence of it was there was no such agreement, judge. It's true the government attorney did not specifically say, no, judge. We oppose the sentences running concurrently, but she said there was no agreement that the sentences run concurrently. She basically disavowed the agreement. Just so I make sure I understand the facts, at the plea, there was a written agreement that was formalized. Is that right, with respect to concurrent or consecutive sentences? Well, sir, it was ambiguous. My argument would be, first of all, it was ambiguous, and secondly, it was not... Tell me again what the agreement said. The agreement said that the two different informations would run... Actually, it was ambiguous as to what was to run concurrently. It said some things would run concurrently, but it was ambiguous as to that. And there was a clause, which the magistrate judge found to be very important, that said that the written agreement was the complete agreement between the parties. What did the written agreement say? The written agreement said that Mr. Bitzu would plea to certain cases, or certain counts, excuse me, that he would stay away from Megan Cresante. And let me see if I can find the exact wording here. And on one information number, it said the Commonwealth agrees to run cases concurrent to one another, and it refers to the other information number. And on the second information, it says the Commonwealth agrees to run cases concurrent to the other number. Well, so case 1327, it was agreed that there would be concurrent sentences. With 1328, but there was nothing with respect to the counts in 1328. The written agreement, that's correct, Judge. But again, at the time the plea was entered, and I have the transcript in front of me, what was told to the judge by the defense counsel was, it's our understanding, Your Honor, that they have no objection to all counts running concurrent. Is that correct? And the government attorney said, yes, that's correct. The judge asked, on both informations, yes, Your Honor. On all counts, yes. And then at the time of sentencing? At the time of sentencing, the judge began by running certain sentences consecutive. The judge was stopped by defense counsel. The judge actually started by saying, I'm going to honor the agreement between the parties. Then the judge was stopped when he started giving consecutive sentences, and defense counsel said, Judge, you said you wanted to honor the agreement between the parties, but you're giving a sentence which is not consistent with the agreement. Our agreement was that all the sentences would run concurrently. And he said, that's not my understanding of the agreement. He said, I had no memory of that. Yes. And the Commonwealth said the only agreement that we had was that cases would run concurrent to each other. That's correct, Your Honor. Counsel, let me ask you. Assuming, and of course this is all in the context of an EPA case, because this obviously isn't a direct appeal, but what type of relief would you seek here? I mean, we understand that the trial judge was not bound by what the parties agreed to. What type of relief would you want here? Well, Judge, I would say, I would answer that in a two-step process. First, I would say that Santabella leaves the relief open to the states. So the specific relief would be up to the states to determine. It would either be specific enforcement or Mr. Bitzer to withdraw his plea. And because of the ambiguity or some argument of ambiguity, that's why when the post-sentence motion was filed and when the appeals were taken through the Pennsylvania courts, both remedies were argued as alternatives. Now, my understanding of Pennsylvania case law is that if the sentencing court does not follow a recommendation of the parties, then that permits the defendant to withdraw his plea, his or her plea. Okay. Now, we are constrained in our consideration of the case by AEDPA, and we have to determine not just what happened in the courtroom, but whether the state court's interpretation of what happened is reasonable. I understand, Judge. That puts an extra step in here, which I find a great deal of trouble in saying that it's unreasonable. Well, Judge, again, I would go to Santabella. In Santabella, the government attorney agreed not to make a sentencing recommendation. When they didn't abide by that and made a bad sentencing recommendation, the Supreme Court said that's a violation of Mr. Santabella's rights. In our present case, the agreement on the record was that the government would make a recommendation to run sentences concurrently. The government disavowed the agreement at the time the sentences were imposed, and I don't see how that could be distinguished from Santabella. Well, Santabella was pretty clear in its facts. The government said it was going to do such and such, and it did exactly the opposite. Yes, Your Honor, and I believe that the same thing happened in this case. Looking at the on-the-record pre-agreement and then looking at what happened in the sentencing. Okay, your time is up. Judge Sirica, Judge Roth, do you have any other things you'd like to ask? I have nothing further. Okay, great. Counsel, we'll get you on rebuttal. Thank you. And we'll hear from Appellee's Counsel. Thank you, Your Honors. Your Honors, may it please the Court, my name is Jim McRonagall with the Luzerne County District Attorney's Office, and I'm representing the appellees in this case. The Commonwealth's position or the appellee's position here is that, in part, the defendant or the appellant is completely making a mountain out of a molehill in what he believes the agreement was. If I could just start, if we could just start, I mean, there's basically no dispute in the facts here, right? I would agree with that, Judge. The written plea agreement, as it's been set out in the record and in the transcripts, the ADA said what she said about not objecting to concurrent time. So I don't think there's a dispute as to the facts. There is certainly a dispute as to what they mean both factually and how they're seen under the rule of Santabello. Okay. Where the appellee takes issue with the appellant's position is claiming that that agreement about concurrent census was a recommendation by the Commonwealth. The Commonwealth's position is that it was what it was. It's exactly what it was. The Commonwealth would not object to concurrent sentences within each information, as the court hinted or certainly suggested and understands. There's two informations here. The written plea agreement clearly said that information one would be concurrent to information two, but said nothing about the internal counts to each of those information. That was left to the court's discretion, subject to the Commonwealth not objecting to concurrent time. And the Commonwealth submits that that's exactly what happened, and the Commonwealth did not breach its agreement in any way with the defendant. At the time of sentencing, all the ADA had sentenced to ask for was a standard range sentence and said nothing about asking for concurrent time or, I'm sorry, asking for consecutive time. All she said was the Commonwealth is looking for standard range sentences, and then the court sentenced accordingly. Well, according to the agreement, as set forth in the written part of the agreement, as the court has shown that they have certainly read the record and know what's in the record, and the Council for Appellant referenced the transcript as well. As already hinted by the court, the Commonwealth submits that the district court conclusion was correct that the Superior Court's decision regarding under Santabella was not an unreasonable one as required by HEDPA. So for that reason alone, the Commonwealth submits that the appeal should be denied as the district court got it right. Secondly, the Commonwealth did not breach the agreement. The cases did actually run concurrently to each other, as indicated in the written plea agreement, and the Commonwealth did not object or make any recommendation other than a standard sentence for each case. But, Counsel, to say that there was no agreement as to whether within each bill that the sentences would be concurrent, isn't that inconsistent with what the Commonwealth's promise was? I understand your point about saying, well, we didn't object to it, but wasn't the trial court left with the impression that there was no agreement here? I would disagree, Your Honor. The agreement was that each case would run concurrent to the other one. But within each case, the court was free to sentence as it saw fit, and the Commonwealth was not going to object or make any kind of recommendation about that sentence. And if the court wanted to impose concurrent sentences, as was advocated by the defense at the time, the Commonwealth would basically stand silent and not object to that. And that's, in fact, what happened. So the Commonwealth does not see what happened at sentencing as inconsistent with the statements and the written agreement presented at the guilty plea colloquy, nor does the Commonwealth see that as a breach of the agreement or a disavowal, as Counsel for Appellant has framed it in his brief and in his comments to the court. Nothing was disavowed. And last, one other point, Your Honors, is the defendant in this case, Appellant, has to show that he was induced to plead guilty by the Commonwealth's agreement. The record is silent as to what inducements or what really went into the defendant's decision to plead guilty in this case. Obviously, there were statements made on the record at the time of the plea, but nothing after that from the Commonwealth's recollection is that the defendant specifically relied on that agreement in order to plead guilty in this case. And ultimately, the appellee's position, the Commonwealth's position, is that the Commonwealth did not breach the agreement in any way, and secondly, the finding by the Superior Court, by looking at Santabella, was not an unreasonable application of that Supreme Court case. Okay. Thank you, Counsel. Is there, Judge Sirica, Judge Roth, do you have anything to add? I have nothing. I have nothing to add. Okay. All right. If there's nothing more, then we'll thank Counsel and then move on to the rebuttal. Okay. I'll be very brief, Your Honors. Firstly, I disagree that at the time of the plea, the agreement was that counts would only run concurrent within an information. Very specifically, the attorney for the government told the court, both counsel told the court that both counts, both cases, all counts should run concurrently. Secondly, the government attorney at the time of the sentencing said that her specific words were, Your Honor, I spoke to Attorney Spiroza, who, first of all, was assigned to these cases, and second of all, was present for the plea. She indicated that the only agreement was that the cases would run concurrent to each other. And the judge said, that's what I've done. I've honored the agreement. Lastly, Your Honor, very briefly, I would say that examining the cases where there's a determination of whether or an interpretation of federal constitutional law was unreasonable or not, generally, I haven't seen any cases where they apply to a situation where there's a clear statement of the law, such as Santabella. Normally, those cases apply to a situation where there's a balancing of factors, and someone is disagreeing with how the factors were balanced. And again, I don't believe that it's necessary to show that Mr. Bits has specifically relied on any specific representation set forth in the plea, as argued by Mr. McGonigal. I think that, again, that's where the court got off track, and they're talking about when there's an obligation upon the court, not when there's an obligation upon the government to fulfill its obligations. That's all I have. Counsel, your adversary pointed out, or argued anyway, that there's no allegation that your client was induced to plead because of this verbal term, I guess. How do you respond to that? Well, I respond to that by saying that it was specifically set out during the plea colloquy that that was an important matter, that that was what we were relying on. That was our understanding of what the agreement was. But is there anything in the record that shows this induced your client to accept the plea as stated? Well, I would say looking at the plea colloquy as a whole. Okay, do you have anything more, Counsel? No, Your Honor. Okay, Judge Sirica, Judge Roth? Nothing further. No. Judge Sirica? No. Great. Okay. All right. Thank you, Counsel. We thank you for your excellent briefing and argument today. We wish you and your families good health and wellness in the near and far future. And we'd ask the clerk to adjourn. And we'll take the case under advisement and ask the clerk to adjourn court for the day.